A. J. BENSON, Administrator, Appellee, v. JOHN ABBAS, Appellant.

**NEGLIGENCE:** Ordering Fellow Worker Into Dangerous Place—Evidence. Evidence reviewed, in an action for damages for death against a defendant who, while a fellow worker with deceased, had no contract relations with deceased; and *held* that the allegation ''that defendant ordered or requested deceased to go into a place which defendant knew was dangerous and which deceased did not know was dangerous,'' was wholly without support.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

JUNE 24, 1924.

ACTION for damages for the death of plaintiff's decedent, caused by the alleged wrongful act of the defendant. The issue was made by a general denial. There was a verdict for the plaintiff, and the defendant appeals.—*Reversed.*

*Crissman & Linville* and *John A. Hull*, for appellant.

*Dyer, Jordan & Dyer*, for appellee.

EVANS, J.—The decedent was the son of the administrator plaintiff, and was eighteen years of age at the time of his death. He was accidentally killed by contact with a high-tension electric wire, while he was engaged in a job of house moving. He was, at the time, on the roof of a house, and engaged in handling and lifting certain telegraph and telephone wires which were hung too low to permit the house to pass under them without such lifting. At an elevation of about four feet higher than the roof of the house, were certain high-tension wires, with a voltage of 33,000 units. The fatal contact was with these latter wires. As to what relation existed between the defendant and the decedent at the time of the accident, the petition was noncommittal. It did not purport to charge the defendant as the employer of the decedent. On the contrary, it charged specifically that the decedent "had not been in the employ of the defendant prior to the accident." It alleged that the defendant was engaged in moving a house, and that he requested the decedent to do the service in which he was engaged at the time of the accident, and that the decedent complied with such request; that the defendant failed to furnish the decedent a safe place to work; that he failed to warn the decedent of the danger of such service, though he himself knew such danger and the decedent did not. The petition contained no other averment as to the legal relation in which the parties stood, or as to the legal duty owed by the defendant to the decedent. The natural inference from such allegations is that the decedent was a mere bystander, and sustained no other relation to the job than that created by his response to the call of the defendant. The petition in such form had a necessary effect upon the instructions to be predicated thereon. This effect was that the nature of legal duty and the extent thereof owed by the defendant to the decedent were not stated in any instruction. The instructions, as a whole, were of that general character which would obtain in a master-and-servant case. In view of this state of the pleadings and the instructions, it has become necessary for us to read the evidence verbatim. In the light of the evidence, we deem it

our duty to dispose of the case on its larger merits, and without great regard for mere technical error.

It appears from the record that the defendant was by occupation a house mover, in the sense that he took such occasional jobs of house moving as he could get, and that he had the equipment therefor, such as blocks, tackle, cable, and capstan, but did not at this time own the necessary tractive power. At the time in question, the defendant was engaged on the job of moving a house for Nichols. This house had to be moved a distance of nine miles over the highway. The job required the aid of eight or nine men. The tractive power was furnished by Benson, the father of the decedent and plaintiff herein. The other men engaged upon the job were gratuitous volunteers. Nichols had suffered the misfortune of losing his dwelling house by fire. He thereupon bought this house, with a view of moving it and making it his new dwelling. This was the occasion of the gratuitous service of some of his neighbors. The defendant, however, furnished his own service and all his equipment at an agreed price of $20 per day. In no other sense did he become a contractor. He did not undertake the complete job as an independent contractor. Benson's compensation was to be a lump sum of $100 for the service of himself and his two minor sons and his steam tractor. His undertaking was to furnish the service of himself and his sons in the operation of the tractor, and to furnish all the coal for his tractor for the complete job.

A proper analysis of the case requires us to consider what contractual relation, if any, the defendant sustained to the decedent. The decedent, a minor, was on the job under the immediate charge and direction of his father, who had the legal right to his time and services. He was not on the job pursuant to any contract made with him personally, but was there pursuant to a contract made with his father. If the decedent was the employee of the defendant, he was such because his father had contracted the employment both for himself and for his minor sons. If decedent was not the employee of defendant, it was because his father was not such. The plaintiff, as a witness, contended that he had made his contract of employment with defendant Abbas. The inference of such contention was that he had thereby become the employee of Abbas. If he

thereby became an employee, then, by virtue of the same contract, his minor son became an employee also. This contention was contradictory to the specific allegation of the petition. Such contention, however, was in the nature of a conclusion, and was wholly argumentative. The detailed facts appearing both from his evidence and from that of Nichols and that of Abbas, without substantial conflict, disclosed that the contract of employment of Benson was made by him with Nichols, though in the presence of Abbas. Abbas had previously told Benson that Nichols would come to see him and make an arrangement with him for the house moving. Before Nichols had appeared, Benson came to the home of Abbas for further conversation, and there stated to Abbas what his terms would be. Both went together to see Nichols, to whom Benson's terms were stated, and by whom the proposal was accepted. Abbas approved the terms stated by Benson and recommended their acceptance by Nichols. This, in substance, was defendant's connection with the contract of employment with Benson. He had no legal interest in the subject-matter. His compensation was fixed by agreement as a per diem, and was in no manner affected by the amount of compensation to be paid Benson. If Benson's compensation had been agreed on at a greater amount or a lesser one, or if his bid had been rejected altogether, and some other person had been engaged to do the same work, the defendant's relation to the job would have remained unaffected. This analysis of the facts at this point is in strict harmony with the allegation of the petition, quoted above, that the decedent "had not been in the employ of the defendant prior to the accident." The accident happened upon the third day of work upon the job; but these days were not successive. The first day of work was on February 4th, whereas the third day was on February 19th. Benson looked to Nichols alone for his pay, and never requested pay from the defendant. He received his pay from Nichols in installments, covering a period of several weeks. It must be said, therefore, that Benson was not the employee of the defendant. The consequence follows that the decedent was not the employee of the defendant. A contrary finding by the jury would lack support in the evidence, and would be contradictory to the petition. It necessarily follows from our foregoing conclusion that,

pursuant to the contract with Nichols, Benson either became an independent contractor or else he became the employee of Nichols. If he became an independent contractor, then the decedent was engaged in service for his own father. If Benson became the employee of Nichols, this would furnish some reason, at least, for saying that the two minor sons became employees also, under the contract made by their father. Whether the decedent should be deemed to have been working for his father or as the employee of Nichols is a question which need not be determined in this case. It is enough at this point to say that no contractual relation existed between the decedent and the defendant, and that, therefore, the decedent was not subject to the authority of the defendant. Neither was the decedent a bystander. He was engaged as a workman upon the job, and had assumed a measure of duty in relation thereto. The defendant was likewise engaged as a workman upon the same job, and had assumed a measure of duty in relation thereto.

It remains to consider whether actionable negligence on the part of the defendant, notwithstanding the absence of contractual relation, is shown by any evidence. The claim is that the defendant ordered or requested the decedent to go into a dangerous place of work; that the defendant knew of the dangerous character of the place and the decedent did not; and that the defendant failed to warn the decedent of such danger. Assuming, for the purpose of this case, the sufficiency of the foregoing legal syllogism, its major premise lacks support in the evidence. The evidence is undisputed that all these parties, the defendant, the plaintiff, Benson, the decedent, and Nichols, knew the potential danger from these high-powered wires and knew that contact with them would be fatal. They mutually cautioned each other against exposure to such danger. The decedent himself gave such caution to Nichols, who went with him to the top of the house. A few weeks previous to such time, these parties were engaged in moving another house, and moved the same under the same wires at the same place. Such house extended two feet higher than the Nichols house. The danger was appreciated at that time and was wholly avoided. The evidence discloses that such danger was fully appreciated by the decedent at the time of the accident. Nichols and the decedent were the two persons

who went upon the house. Their purpose was to handle only the telegraph and telephone lines. This purpose could be safely accomplished. They had no need to touch the high-powered lines, nor had they any purpose to do so. These were aloft four feet above the house, and presented no interference to its passage. Just what movement by the decedent brought him in contact with them is not disclosed. No witness knew just how the contact was made. The theory urged in argument for plaintiff is that there was a "jump" of the electricity across a space between the wire and the decedent. But there is no evidence that such a "jump" could occur under the conditions appearing. It does appear from the expert evidence that, if a perfect conductor were placed at a distance of an inch from the wire, it could produce a "jump." It also appears from such expert evidence that, under the conditions existing, the decedent's person would not have been a perfect conductor, for the purpose of such a "jump." If it should be said that the decedent appreciated the danger of contact, but failed to appreciate the danger of *near* contact, yet there is no evidence that the accident occurred in any other manner than by actual contact, nor any evidence that the defendant's knowledge and appreciation of the danger was any greater than that of the decedent.

It appears from plaintiff's testimony that he had so fully appreciated the danger involved in proximity to such wires that he had expressly stipulated in his contract that he and his sons would have nothing to do with wires, because of the danger involved, and that he had advised his sons to such effect.

As against the defendant, it does appear that he asked if "one of you boys" would go to the top of the house with Nichols, to help him handle the wires. This was done in the presence of Nichols and in the presence of the father of the boys. No objection was made by anyone. The decedent, a quick and willing worker, immediately responded, and went with Nichols. Concededly, this was done with the knowledge and acquiescence both of Nichols and Benson, the father.

The only ground of negligence which was charged against the defendant would be equally chargeable either against Nichols or against the plaintiff, Benson, or both, disregarding, for the moment, the question as to which of them was the em-

ployer of the decedent. The ground of negligence so charged is, in substance, that the defendant permitted the decedent to go into a place of danger, the defendant knowing and appreciating such danger and knowing that the decedent did not. The evidence does not sustain this charge. We do not overlook that the defendant and decedent, as fellow workers, owed to each other mutual duties of ordinary care in their mutual performance of work. But there is no evidence in this record to warrant a finding that the defendant failed in such duty. If this accident had resulted from some defect of construction or operation in the equipment furnished by the defendant, a different question would be presented.

We are compelled to hold, therefore, that the evidence fails to show any breach of legal duty owed by the defendant to the decedent. The defendant's motion for a directed verdict ought, therefore, to have been sustained. The judgment below is, accordingly, reversed.—*Reversed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.